The Hazelwood Act provides an incentive for Texas residents, no matter when they arrived in Texas and no matter how long they've been there, to join the military and pursue their education. Targeting the incentive to Texas residents is a rational way of maximizing the return on the state's investment because it focuses what is a portable educational benefit on people who are more likely to stay in Texas after they graduate. That limitation is essential to the Act because it is the basic eligibility criteria. And even if that were unconstitutional, it could not be severed without defeating the legislature's purpose. Could I ask a specific question about Mr. Harris? This is a prospective relief, right, not retrospective. He's been getting his tuition paid for this semester because of the injunction or what's the status and when does the next bill due and does the case become moot after the tuition bill is due for the spring semester because he's in his third year? I'm just curious factually. Maybe you don't know the answer and they know the answer. We've entered an agreement with Mr. Harris. Because this case is only about Mr. Harris's benefits, we have entered an agreement that he won't have to pay tuition pending the ultimate outcome of this suit. But if the district court's decision is properly overturned, then he will be responsible for paying his third year tuition. Are you saving his money? I beg your pardon, Your Honor? Saving up his money? Yes, sir. But, I mean, is there a point at which this case becomes moot that we don't, that once the bill comes due, why isn't the case moot at that point once his last bill is already due and paid? You're not requiring him to pay, right? Well, that's exactly right. We're not requiring him to pay, so whether he is liable for the tuition does depend on the outcome of the suit because he will be responsible for the payment. And so it doesn't become moot because... It's no longer prospective, though. It was past due at some point. Well, the... It's just you have an agreement for us to decide this case, which it might have on its own mooted out otherwise, right? I'm not sure that that's the case, Your Honor, because he raised his claim before the tuition became due, and so he has pursued that relief. So I don't believe it would become moot. And if I'm wrong about the mechanics, then... Okay, that's fine. I don't want to get you off your statutory argument. Go ahead. Well, I want to start with the Equal Protection Clause because the district court made a fundamental legal error on the equal protection analysis. If you look at page 16 of the district court's order, this is in tab 4 of the record excerpts, and it's Record on Appeal, page 1178. The district court found that promoting education plainly is a legitimate state interest, and it found that the act plausibly advances that interest because it encourages Texas high school students to graduate, join the military, and come back for higher education. That's enough to sustain the Hazelwood Act under rational basis review, and the analysis should have ended there. But the court went on to strike the law down because the state didn't explain, as it found, why it was necessary to include certain individuals to achieve the state's goal. And that's on ROA 1179. That's not rational basis review. Whether a state's classification is necessary to achieve a goal is the hallmark of strict scrutiny. The district court mixed up the standards of review, and it's proven on the same page where he quotes part of a sentence from the plurality in Soto Lopez, not the controlling opinion of the court. He only quoted part of the sentence, but when you read it in full in Soto Lopez, it says, all four justifications fail to withstand heightened scrutiny on a common ground. Each of the state's asserted interests could be promoted fully by granting bonus points to all otherwise qualified veterans. That is a mistake of law. Whether it is necessary to exclude certain people is completely irrelevant to rational basis review, and that error requires this court to reverse. The district court's opinion cannot be salvaged by relying on the three fixed-point residence cases from the Supreme Court. Zobel, Hooper, and Soto Lopez all applied rational basis review. The court did not hold that fixed-point residence requirements are subject to strict scrutiny in those cases, nor has it ever. And those cases were struck down on rational basis review for reasons that do not apply to the Hazelwood Act. There are two major distinctions. The first is the question of incentives. In every one of the cases that the Supreme Court has considered fixed-point residence requirements, the states argued, well, we're trying to create an incentive, but the court found that the mechanism they used was not rationally related to that because it couldn't possibly provide an incentive. The benefit was entirely retroactive, so no one could decide, I'm going to go qualify for this benefit. That's absolutely not the case here. Second, separate classes of residents. In every one of those cases, the court found that the classification that the state drew had the inevitable effect of creating a set of casts among otherwise equally situated state residents, and that was not permissible. In Soto Lopez, Soto Lopez illustrates why that is a problem because it's not just that some people got a benefit. It's that the people who don't get a benefit are actually put at a disadvantage. In that case, it was a civil service preference for military veterans. But for every veteran who got extra points on his civil service exam, that reduces the chances that somebody else will get that job. That is not the case with the Hazelwood Act benefit. Even for a person who doesn't get the benefit, they are not subjected to any disadvantage because if they're a resident, they pay in-state tuition, and the Hazelwood Act provides expressly that in making an admission decision, the institution shall not consider whether the applicant is a Hazelwood Act beneficiary. So, there is no reduction of access to higher education. All it is, is that some people get a benefit, some people don't. Do the admissions officers know who is qualified for the Hazelwood benefit? You said they don't consider it, but do they know? There is no indication in the record that they do. All I know is that the Act says you shall not consider this. Now, the Hazelwood Act, it does provide an incentive because the benefit is perspective. It's a future benefit that someone, anyone who is a Texas resident, no matter how long they've been here, can join the military and they qualify. There is no caste system because there's no permanent disadvantage or stigma. It doesn't create a different caste or class of citizens for one person to get a tuition benefit and another person not to. That's no more a class system than it is for me to get a scholarship to law school and someone else not to. Once we graduate, there is no lasting stigma and it's not a permanent disadvantage like the laws imposed in Soto Lopez, Hooper, and Zobel. Those were permanent, perpetual distinctions where some people had a continuing right, some people didn't. Not the case here. What do you do with the language? I understand your explanations about why the Supreme Court cases are different, but the language in the Supreme Court cases is bad for you. The state may not favor established residents over new residents based on the view that the state may take care of its own. You could substitute over the desire that the state may want to take care of its own students. These other people are Texas veterans also. They're all veterans. Why isn't the language in those Supreme Court cases really bad for the state's position? Right. The language that Your Honor just quoted, it doesn't even apply here because what the that was in response and in rejecting the argument that the states could apportion benefits to established residents based on their length of residency in order to reward them for past contributions. We're not asserting that interest. We're not asserting that we're taking care of our own. Well, that you're promoting Texas high school students to be educated. Which unlike the interest in rewarding for past contributions is completely legitimate. Was that asserted at the time that that was the basis? Is that somewhere in the statute that that's been asserted as part of the basis? I'm not aware that it is and it doesn't have to be. This is rational basis review. There is no requirement that the legislature actually articulate the purpose, the question. It makes it easier when they do. We have a lot of rational basis review from Texas these days. They didn't, but you are coming up and saying that now. What do we do about the fact that the different attorneys general of the state have taken different positions? Do we ignore both of those opinions? Is that what we should do? Well, they're obvious. We should ignore your boss's opinion or something. Maybe it's an awkward question. Well, they're non-binding. They are opinions. But the reason that the 1998 opinion is not persuasive is one, that opinion for whatever reason just did not consider how the act operates and it didn't advance the arguments or consider the arguments that we have offered. But second, that came out in 1998. Sines versus Roe was decided in 1999 and the Supreme Court in that case came out and recognized a distinction between benefits that aren't portable, like welfare, and benefits that are portable, like a college education. And so we can only speculate that had the AG in 1998 had the benefit of Sines, they would have at least had to consider that. And that's one of the main arguments that we are advancing. This is back to rational basis review. It doesn't matter if no AG ever came up with any reason. The court could come up with a reason, a hypothetical reason that could possibly have motivated the legislature. And that's good enough as long as there is a reasonable basis to believe that it could achieve the goal. Before you run out of time, would you address the severability issue? Absolutely. There are two points on severability. One, severability is keyed to legislative intent. In this case, it's evident on the face of the act. The legislature intended to provide benefits only to people who joined while they were Texas residents. That's the basic overarching eligibility requirement. It applies to every class of beneficiaries. Expanding the scope of the act contradicts that legislative purpose. Severability is not a blue pencil test where you cross out the allegedly offending provision and then read the rest of the text and see if it's comprehensible. But that's exactly what the It would be very different if we were talking about the legacy benefit, for example. If for some reason that were held to be unconstitutional, you could sever that because it's one discrete category of beneficiaries that the legislature intended to benefit, but it still leaves part of the legislature's intent to be fulfilled by providing a benefit to other people. And there's a critical point here that relates to the equal protection argument. If the plaintiff is right about equal protection, he can't possibly be right about severability. The whole basis of his equal protection argument is that this law is unconstitutional because the legislature deliberately set out to target this benefit only to a certain group of people. It is not plausible to then turn around and say, but we can still enforce the rest of the law without that provision, which was the only reason that we struck it down. If that's what they meant to do, that's what they meant to do, and if it's unconstitutional, the law cannot be enforced. I want to be clear, though, about the rational basis that we have. It is reasonable for the legislature to believe that people who join the military in Texas are more likely to stay there after they graduate, and the legislature is perfectly entitled to try and get the maximum return on its investment. This benefit is portable because once you get an education, you can take that diploma and that qualification and go anywhere in the country. And the state's interest in preventing people from taking advantage of in-state tuition and preferences for in-state residents has been recognized by the court in Vlandis v. Klein, Martinez v. Bynum, and Starnes v. Malkerson. It's entirely reasonable to tie the time of enlistment to the benefit because that's the only time that the incentive can operate. That is an entirely rational basis to achieve the state's purpose of encouraging Texas high school students to join the military and further their education. If there are no further questions at this time, I'd like to reserve the rest of my time. When you come back, will you talk about the Texas Government Code 311.032 and about severability? And will you also answer the question I asked you about what we should do with Attorney General Paxton's? You didn't address that at all. You addressed only the Attorney General Moralysis. Thank you. Thank you, sir. First up, Mr. Shepard. May it please the court. My name is John Shepard. With me is my partner, Nick Morrow. I'm very proud to represent Keith Harris in this constitutional challenge. I thought the most important sentence in the appellant's brief was at note 14 in which the appellee's court to overrule Soto Lopez, Hooper, and Zobel. And that is because those Supreme Court cases which have been on the books for years are controlling in this matter. The Attorney General for 15 years agreed that they are controlling in this matter. The California Supreme Court in Del Monte faced with an identical statute for veterans' benefits that required you to be a California resident at the time you entered the military, an identical statute, also agreed that those Supreme Court holdings were binding on it. Well, they're not asking us to overrule it. They want to preserve it so the next time they argue before the Supreme Court that they haven't waived that. Correct, Your Honor. The Supreme Court itself has deemed its prior rulings on this issue binding in somewhat different contexts. For example, Hooper looking at the decision in Zobel said we are constrained by Zobel because Zobel makes it clear the Constitution won't tolerate fixed permanent distinctions based on how long someone has been in the state. And that is at 472 U.S. 623. Will not tolerate. Does not say anything about portability, prospectiveness, or any of these other distinctions that have now been raised. The permanent nature, the fixed nature of this classification of bona fide Texas residents has been deemed unconstitutional based on how long you've been in the state. Well, only if you required, if there's nothing you can do about it. In other words, if you haven't lived in Texas, well, then that might be discriminatory. But in this case, if you continue to live in Texas, and if you join the military or if you're in the military, it's prospective. You can do something. You can control it. The individual has some control over it. So that's a big distinction as far as I'm concerned with those cases. I think it is, Your Honor. In Soto Lopez, I did not read Soto Lopez as not being a prospective case. In fact, one of the arguments they gave is our law in New York will encourage people to enlist in the military. That is a prospective justification given. That law was not struck, the court did not say it is impossible to encourage someone to enlist under this law. They did not say that. In fact, and it was not just the majority of plurality opinion that said you can give this benefit to all and still accomplish that goal. In fact, the Berger concurrence recognized that the law was irrational because you could still give this benefit to all New York residents and still prospectively encourage people to enlist. So prospectiveness was an issue in Soto Lopez. But I do go back to the holdings of these cases, which do not create any distinction for prospective behavior. Soto Lopez did have perspective. That said, it's not an element. Soto Lopez, looking at the holding in Hooper, also deemed it controlling, even though Hooper dealt with a tax benefit and Soto Lopez dealt with a civil service point, even though the circumstances were somewhat different. Why? Because both cases still undeniably involved a fixed, permanent classification of bona fide, quote, controlling. He said Hooper's framework dictated how they decided that case. And he said that the case can be decided very succinctly by quoting, quote, admonition, which only be reiterated briefly, which says, the state may not favor established residents over new residents based on the view that the state may take care of its own, if such is defined by prior residents. Newcomers, by establishing bona fide residents in the state, become the state's home and may not be discriminated against solely on the basis of their rival in the state after a fixed date. That's precisely what is happening here. And Justice Berger agreed that that clause itself is really all we need to look to. And the appellants agree that Justice Berger's opinion is the controlling opinion in this case. As for portability, I would present to this court that that is an unworked, one, there is no basis for that in any of the fixed, permanent jurisprudence, none whatsoever. Appellants are citing to a different line of cases involving durational requirements, which the Supreme Court has said are an entirely different case altogether. In fact, in Hooper and in Zobel, both the Sanza case and the Saenz case cited for these portability issues were cited and expressly determined to be quite unlike, and in Hooper they said they differed. So these are durational case concepts that have no place in the clear lines that have been drawn in the fixed, permanent discrimination jurisprudence. Even if we were to rewrite Zobel, Hooper, and Soto Lopez and incorporate some sort of portability concept into it, I would present to this court that that is unworkable and it's arbitrary. I disagree that a college education is portable. This isn't something you go buy off the shelf for a fee. This is something you work towards for a number of years, you are a member of a community, you are contributing part of that community, and you are contributing to the state during that time. The fact that you continue to live your life after you obtain a college degree, to me, does not make it portable. It means you take it with you wherever you go for the rest of your life. I agree, Your Honor. I would compare it to the situation of medical benefits or emergency room benefits, which the appellants cite as being clearly not portable. That's portable. You walk into a hospital, your life is saved, and you leave the state with your life. Certainly we're not going to create a law here in Texas that says we're not going to treat out-of-state residents because we're not going to make this incredible investment in your life only to have you leave the state. Perhaps a more realistic example would be a high school. High school education is a portable benefit. Is Texas going to deny people who did not do junior high in Texas? But you put that in your brief. There are other constitutional provisions, cases that prohibit that already about school availability, Doe v. Plyer, and all that. That's not... That may be... There's a whole other area of law that protects people's rights to go to public school. I cite this merely to exemplify that, one, again, there is no portability exemption. Two, if we were to create one, this is an incredibly vague spectrum, and I don't think you can draw clear lines as to what is portable versus what is not. Why is it vague? What I mean is, how do we define portability? You can travel. You don't have to... If you get a college degree in Texas, if you move to Arkansas, you don't have to have... Texas can't void that college degree. They can't say, well, oh, no, you're leaving the state. Okay, we take our degree back. Good example. For example, in Zobel, the residents were given a dividend based on the energy revenue of the state of Alaska. That's portable. You can put that money in your pocket and then leave the state. Yeah, but if you leave, you don't get it again. That's correct, but you did... You got the benefit and then you left. Just like with the college degree, you got the benefit and you left. My point is, I think almost anything can be argued to be portable versus non-portable. Well, not civil service jobs. Again, Your Honor, I think on the spectrum, that might fall in a particular place, but I could see New York complaining that we have trained someone to be a master plumber. We invested two years in their training and then they up and left and took the services to Maryland and we did not recover the investment of making... Well, plumbing's different. You have to be licensed in the state where you plumb. I understand, but I think in any benefit, there's an investment and there's something that person can do after Your Honor, as to the standard of review, in their reply, the appellant cited a new string of cases that hearken to this extreme deference that are given in tax cases and economic cases. And in one of those, the Armour case, the Supreme Court made it very clear that this deference that pops up in rational basis analysis does not apply here. And in fact, cited directly to Hooper and Zobel. Why? Because Hooper and Zobel involve a quasi suspect class of residents that have been subject to constitutional difficulties in the past. And so this entire line of cases where you can cite any reason and the court can't look at it or second guess it just is not applicable. The Supreme Court has made it very clear, and so do Lopez, Hooper, and Zobel, that we will look at your reasons and determine if they make sense. And these don't make sense. They're not rational. Each and every one of them have been rejected by other Supreme Court cases. For example, the first reason to target those most likely to say, this one is quite shocking to me because it is an admission that the fundamental right to travel is implicated in this case. The state is saying, people who have lived here longer are more of our own. They're more like us. They can be trusted to stay here longer. That's not okay. Hooper, Zobel, and Soto-Lopez have said, once you become a resident, you are the state's own. And it is unconstitutional to treat you as anything but. To encourage enlistment, Soto-Lopez expressly struck that down under the rational basis test. Finally, to incentivize high school education. We've had a hard time wrapping our head around this. We just think this is so far removed from any rational reason of implementing Hazelwood. It just doesn't make sense. To demonstrate that, take the example of encouraging enlistment in the military. That at least makes sense. That makes sense that you might encourage someone to go into the military by giving them this benefit. What the appellants have done is taken something, and that has been struck under the rational basis. What the appellants have done is gone a step further away from rational. Gone down the chain to high school. Under no circumstance can that Texas government code is very clear. Under 31.032, a law is severable if it can be given effect. I would present that this is, in fact, like a blue pencil situation, if that's the right term. If you can strike the offending provision and it can still be given effect, you do so. None of the cases that we've looked at refused or said severability is inappropriate. Two, sent it back to the state court because it was an appeal from the state court. In Soto Lopez, the Supreme Court affirmed the injunction that the Second Circuit had put in place, which effectively was severing out the offending provision. And in Del Monte, the California Supreme Court severed the language as well. If we are going to look, even though the Texas government code tells us we apply it if it can be applied, the only evidence in the record as to the intent behind this law is obvious to everyone in this court, is to reward veterans for their service. We have, in the record, language from the House analysis bill, the Senate analysis bill, Senator Vandepute commenting on what this bill is about, and most recently, the legislature talking about why they, in fact, need to put more money towards this program instead of limiting it, and all of them saying that this is a benefit designed to reward veterans for their service. I think it would shock all of our state legislatures if they knew the argument that this is a high school incentive that was being advanced. The Texas Attorney General opinion, Your Honors, was a matter of public record for 15 years. So I think if we're going to pick one over the other, I think we're almost in a stare decisis position, at least with AG opinions. But you don't think we need to get either one of them, do you? I don't think it's necessary, no, Your Honor. I do think it adds color. I think it's quite evident that the reasoning is there. It's a well-thought-out opinion. It's consistent, more importantly, with the Supreme Court jurisprudence and all the other cases before the court. I mean, if anything, would it only be relevant to why we shouldn't stay the decision if we rule for you, because they've known for many, many years that there was a potential problem with this, and certainly this year they've known there's a potential problem, and they could have done something about it if they were going to do something about it. I believe that's correct, Your Honor. And not only the AG opinion, but the Supreme Court case law and the UT has been on notice because they got the answer. This case, Judge Warline is ruling in January, and they had the opportunity to do something about it, and this is a political issue. They've decided that this isn't a financial crisis for them. In fact, they want to allocate more money, and so they chose not to do something. So I think you're right, Your Honor. I think there's been plenty of time to act. Every day, every semester that money is collected from these veterans, they'll never get that money back due to sovereign immunity principles. Mr. Harris, to your point, he has to pay this money back if he loses. He's already paid two years' worth of tuition that, quite frankly, he shouldn't have paid. And so I do, to your point initially to counsel, this is still a ripe issue. He needs to win this, and it would have a big financial impact on him. So my time is up. If the panel doesn't have any further questions, I have enough for further. Thank you, sir. Oh, they've got their other five. Yeah, they split it off. May it please the Court. Judge Clement, real briefly, I wanted to address your concern about the fact that this is alleged to be a prospective benefit and that that makes some kind of difference. Now, the Del Monte v. Wilson case expressly dealt with that issue, and I think the reasoning there is persuasive. And the Court said that such an argument isn't the proper inquiry in an equal protection case, and it confuses the classes of similarly situated individuals who are being compared for purposes of the equal protection analysis. What you've got to look at is, are there people who are being discriminated against? And in this situation, you've got two bona fide classes of Texas citizens and one class is being discriminated against. And as I noted in the Del Monte case, it's not fair to expect somebody like Keith Harris to reenlist in the military in order to obtain these benefits. And so I wanted to address that issue. On the portability issue, again, that's another issue that Del Monte v. Wilson addressed. And, excuse me, actually, Sons v. Rowe, I think, dealt with that issue on some level and said the number of persons, they looked at the evidence in that case and said the number of persons who's going to do something like that is quite small and surely not large enough to justify a burden on those who had no such motive. I think that's equally applicable here. We just have no evidence to suggest that somebody's going to move to Texas. A lot of people moving to Texas. There are a lot of people moving to Texas, Your Honor, but not a lot of them have served our country in the military. And there's no evidence that a lot of them have exhausted their GI benefits, are going to apply to graduate school, are going to be admitted to graduate school, and are going to be admitted to graduate school over other viable candidates. Of course, there's a limited number of spots. I'm not sure you're right about that. That there's a limited number of spots. People moving to Texas aren't going to go to graduate school or aren't going to further their education. I mean, it's a real hot spot. Well, there's no question. I think that, and in fact, I think we should, and I think the intent of the law reflects this, we should encourage veterans to move to Texas and to attend our schools and to go and serve our community. And the state will yield economic benefits from that. I don't think there's any doubt about that. Well, if they can afford to pay all that tuition. Well, and that's an important point, Your Honor, because that is something that I think is important to note. It's not like this is a cash payment from the state. These are people who are just being allowed to go to the class and attend the school without having to pay tuition. That's right. But it takes the place of a person who would be paying tuition. So there's a deficit. You can't ignore it. I'm not sure that it does. I don't, you know, I certainly haven't seen any literature from the state that suggests that there's a limited number of seats that everybody's filling and that we can't accommodate additional veterans who would apply and attend graduate school under this law if it were expanded to include folks like Keith Harris. I wanted to talk real briefly about rational basis, too. We know from Zobel that rational basis means there has to be a rational connection between the distinction, between the public distinction that's being made. And here there's simply no rational relationship between promoting education and excluding Keith Harris from those who get to attend graduate school under this program. And that's what Judge Warline finally said. You could strike this exclusion and you can still further the state interest. And I think that's the case here. And what we're really talking about here is all these justifications that are being advanced now after the fact. They're really just pretexts for cost, right? This is going to cost the state too much money. And we know from Sons that's not a valid consideration. It's just not. It's not a valid consideration for discriminating against bona fide citizens. And I don't think there's any dispute here that Keith Harris is a bona fide citizen of the state of Texas and was when he applied for graduate school. And I would say, Your Honor, that I think that the cost argument that's been made by the Now it presumes that the 640,000 post-Gulf War vets who are in the state of Texas and are not currently receiving Hayeswood, number one, didn't enroll in the military in Texas, which I think is probably, misses the mark quite a bit. I think a lot of the folks who are in Texas probably enrolled in the military in Texas. Number two, that they want to go to grad school, that all of them do. And number three, that all of them are going to get into grad school. And I just think that there's just no evidence to support that all of those contingencies are going to be met. And again, we know from Sons that it's not a valid consideration anyway. All right. Thank you. Mr. Marr, now back to you, Mr. Federer. Thank you. Judge Elrod, General Paxton's opinion should be taken for its persuasive value only. And to the extent that it is consistent with the arguments that we've made, it should be persuasive because it's a correct reflection of rational basis review. Texas Government Code, Chapter 311, that is not intended to work a substantive change in the law. This court in National Federation of the Blind of Texas v. Abbott explained what the severability standard is under Texas law. And it's whether the rest of the statute can be given effect while still respecting the legislature's apparent intent. It's not just the blue pencil test. There is no support for that in the law unless you want to read it. But it can be unless you buy your cost argument. No. It can be if it is consistent with the legislative intent. But it makes absolutely no sense for them to say that it's unconstitutional because the legislature intended to do this and then to turn around and say, but we can ignore that for severability because it doesn't work. Well, the legislature did intend to benefit veterans. So, I mean, it may have also intended to help people from high school, but it certainly did intend to benefit veterans. You can't argue that that's not an overarching intent of the statute. True, but they didn't intend to benefit every single veteran. And you can't presume a broader intent by eliminating qualifying language. That's just not how severability analysis works. Would you be able to argue to us that it was to help people go into the military? We wouldn't make that argument because you know that's foreclosed. It's not foreclosed. That's absolutely not true. Well, then can you help me with that? Sure. In Soto Lopez, the problem wasn't that court did not hold that it's impermissible and illegitimate to encourage people to join the military. The court applied rational basis review and said that can't possibly be a justification for this law, because, one, it can't incentivize anybody because it's entirely retrospective. This is right there in Chief Justice Berger's opinion, that plainly the preference is granted only retrospectively following definitive action by the legislature. Well, then if that was the case, and you could have argued that it was to benefit the military, I mean if you could have said that that was to encourage people to go into the military, then why didn't you just argue that instead of saying it's back up to high school? We have argued that, but it is connected to high school because we're trying to encourage people who might not otherwise go to college to go ahead and finish high school either before or after they complete their military service, in which case they will get help going to college. At some point does that argument get too attenuated? I don't think it does at all. If you said that people should move to Texas and have babies here because we want to encourage patriotic people whose kids will want to go to college and then want to join the military, could that be the justification? I mean at some point does it get too far back to where it's not really the reason? It could be a justification for some law. I'm not sure if it could for this. That's what I'm wondering. Could it be for this one to have infants come to Texas, born in Texas? No, I don't think so because that's not how the law works. So it's high school but could it be for middle school students to stay in school? It could be. What's the limit? I mean that's how it could operate. It's the law that you have to have an education until the 12th grade, so I don't think you need to be incentivizing children. The whole point is to graduate from high school and then better yourself by going to college. A lot of people graduate from high school who don't even consider college because they can't afford it. That's exactly right, and that's why this benefit is being provided to incentivize people. The plaintiffs have completely misunderstood rational basis review. It runs throughout their brief. It runs throughout the district court's opinion. They have no response to the district court's clear error on the law. But you have to acknowledge that these Supreme Court precedents that were supposedly applying rational basis review were pretty strict. Aren't we going to be kind of hung out there if we rule with you? No, you're not because if you apply the same standard to this, it is distinguishable on the two grounds that I have noted and that the Supreme Court used to strike down those laws. If you adopt their argument and affirm the district court, you're going way out on a limb because you will be fundamentally overhauling decades' worth of rational basis review. But we have three cases of the Supreme Court that have struck down similar types of things. I would direct the court to Heller v. Doe, FCC v. Beach Communications, all of the rational basis cases that say it is inherent when the legislature distributes social or economic benefits that there is a line drawing. What about Armour? I'm sorry? What about the statement that it doesn't apply in this context, that those cases don't apply in this context? That's just not true. Dandridge v. Williams dealt with welfare benefits. It said that rational basis review applied. Does Armour not distinguish these types of contexts? No, it doesn't. Okay. No, it doesn't establish that. Heller v. Doe actually, I'm sorry, FCC treats regulatory requirements and it says much like classifying governmental beneficiaries, inevitably requires that some persons who have an almost equally strong claim to favor treatment be placed on different sides of the line. That's exactly why rational basis review applies here. This court should reverse and render. All right. Thank you, counsel, both sides. The case will be submitted.